PAUL S. PADDA, ESQ. (NV Bar #10417)
Email: psp@paulpaddalaw.com
PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888
Fax: (702) 366-1940
**-and-**
ANTONIO M. ROMANUCCI, ESQ. (Admitted PHV)
Email: aromanucci@rblaw.net
PATRICK DRISCOLL, ESQ. (Admitted PHV)
Email: pdriscoll@rblaw.net
COLTON M. JOHNSON TAYLOR, ESQ. (Admitted PHV)
Email: cjohnson@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, Illinois 60654
Tele: (312) 458-1000

*Attorneys for Plaintiff Kristina Kerlus*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| KRISTINA KERLUS, individually; | Case No.: 2:24-cv-02352-NJK |
| Plaintiff, |  |
| vs. | **SECOND AMENDED** |
|  | **COMPLAINT** |
| DR. JENNIFER CORNEAL, in her individual capacity; A. SANTOS, in her individual capacity; COUNTY OF CLARK, a municipal corporation; LAS VEGAS METROPOLITAN POLICE DEPARTMENT an independent political subdivision; jointly and severally, | **AND** |
|  | **JURY DEMAND** |
| Defendants. |  |

NOW COMES the Plaintiff, KRISTINA KERLUS, individually, by and through her undersigned attorneys, files her Second Amended Complaint against the Defendants, Dr.

1

JENNIFER CORNEAL ("Dr. Corneal"), in her individual capacity; A. SANTOS ("Santos"), in her individual capacity; COUNTY OF CLARK ("Clark County"), a municipal corporation, and LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD"), an independent political subdivision, stating unto this Court as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and Nevada state law against Defendants, Corneal, Santos, Clark County, and LVMPD.

2.     Jurisdiction is founded upon 28 U.S.C. § 1331 and pendent jurisdiction over the state law claims.

3.     Forum is proper based on the situs of the incident, which occurred in the City of Las Vegas.

## PARTIES

4.     At all pertinent times Plaintiff, Kristina Kerlus, was a United States citizen and a resident of the State of Nevada.

5.     At all pertinent times, Defendant, Dr. Corneal, was employed as a pathologist by the Clark County Coroner's Office, a department of Clark County, and was acting within the scope of her employment and under color of law.

6.     At all pertinent times, Defendant, Santos, badge number 7200, was employed as a detective by the Las Vegas Metropolitan Police Department ("LVMPD") and was acting within the scope of her employment and under color of law.

7.     Santos, as a sworn police officer, had taken an oath, the Law Enforcement Code of Ethics, that stated, in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

2

8.      Defendant, Clark County, was, at all relevant times, a municipal corporation organized under the laws of the State of Nevada.

9.      Defendant, Las Vegas, was, at all relevant times, a municipal corporation organized under the laws of the State of Nevada.

10.     Defendant, Las Vegas Metropolitan Police Department, is a political subdivision of the State of Nevada and employed Defendants Corneal and Santos. The LVMPD is liable for all state law torts committed by Corneal and Santos while they were employed by the LVMPD pursuant to the doctrine of respondeat superior. The LVMPD   is responsible for its own policies, practices, and customs.

## GENERAL ALLEGATIONS

11.     On October 4, 2018, 12-week-old J.D. spent an uneventful day with his mother, Kristina Kerlus, and father, Jaevone Davis.

12.     That evening, Plaintiff breastfed J.D. and placed him next to her on their bed.

13.     The next morning, October 5, 2018, after preparing a bottle of formula for J.D., Plaintiff left for work at approximately 8:30am. J.D. was sleeping when she left for work.

14.     Approximately one hour later, Mr. Davis awoke and saw that J.D. was crying while laying on his stomach on the bed. "He was real crabby for some reason."

15.     Mr. Davis attempted to feed J.D. with the bottle but was having difficulty feeding him. Normally a happy baby, Mr. Davis later told investigators that "[J.D.] don't feel like he's giving me the energy that he gives me."

16.     Mr. Davis took J.D. into the kitchen and began splashing water on J.D. He then called Plaintiff and called 911 at 9:39 a.m. The 911 operator instructed Mr. Davis to start chest compressions, which he did until paramedics arrived and transported the baby to Summerlin Hospital. By this time, J.D. was in cardiac arrest.

17.     At Summerlin Hospital, doctors diagnosed a brain bleed. A CT scan was run. The scan revealed:

a.  No evidence of scalp swelling;

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

3

b.  No skull fractures;

c.  Fluid "consistent with" subdural hemorrhage;

d.  Diffuse subarachnoid hemorrhage;

e.  No definite bleeding within the brain substance;

f.  Features concerning for brain swelling.

18.    Concerned that the baby exhibited signs of Shaken Baby Syndrome ("SBS"), the Summerlin doctors notified the LVMPD and Child Protective Services ("CPS").

19.    J.D. was transported to University Medical Center ("UMC") for further treatment.

20.    While at UMC, J.D.'s condition declined. He was placed on life support and tragically succumbed to his condition on October 7, 2018.

**Dr. Corneal's Autopsy**

21.    On October 8, 2018, Dr. Jennifer Corneal, a forensic pathologist for the Clark County Coroner's Office, was assigned to perform the autopsy on J.D.

22.    Dr. Corneal reviewed the medical records from Summerlin Hospital and UMC. She noted that there were "no outward signs of trauma to explain decedent being in medical distress."

23.    Dr. Corneal was already aware that doctors at Summerlin Hospital were concerned that the baby exhibited signs of SBS.

24.    Dr. Corneal was aware of a previous incident at a daycare on September 18, 2018, where Plaintiff noticed a cut and bruise on J.D.'s left leg, and that J.D. had been acting "cranky and eating less since the incident."

25.    Dr. Corneal's autopsy revealed "extensive subdural and subarachnoid hemorrhage with associated cerebral edema and herniation." She also noted "subdural hemorrhage down the length of the spinal cord" and "hemorrhage of the posterior aspect of the eye and within the optic nerves."

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

26.     Dr. Corneal's autopsy noted "extensive retinal and sub-retinal hemorrhages, optic nerve sheath hemorrhage and optic nerve edema bilaterally, as well as focal early necrosis of the left optic nerve."

27.     Dr. Corneal also noted healing posterior left-sided rib fractures of the 9th and 10th ribs.

28.     Dr. Corneal, in a classic example of Confirmation Bias, quickly concluded that the "triad" of symptoms demonstrated evidence of "Shaken Baby Syndrome," or "Abusive Head Trauma."

29.     Dr. Corneal conducted microscopic analysis of J.D.'s organs but failed to document that there was clear and obvious evidence of widespread SCT in each organ.

30.     Dr. Corneal knew but consciously discarded the hypothesis that J.D.'s condition was the result of a rare, but known, complication of SCT.

31.     Dr. Corneal noted that J.D.'s heart was nearly double the normal heart size for an infant of his size/weight but failed to attribute any significance to the finding.

32.     Dr. Corneal was aware of J.D. having pulmonary hypertension and having been ill and vomiting in the weeks prior to October 5. She did not seek to reconcile these findings with her diagnosis.

33.     Dr. Corneal observed that J.D. did not exhibit any evidence of diffuse axonal injury, including that caused by trauma, which would have been present had the baby been subjected to a whiplash-like shaking or abusive head trauma.

34.     Given the evidence in the autopsy, any reasonably well-trained pathologist acting in good faith would have concluded that J.D.'s death was the result of complications from SCT, which readily explained the anoxia-ischemic encephalopathy due to subarachnoid hemorrhages complicating the rupture of a thrombosed cerebral artery. Instead, Dr. Corneal consciously ignored any evidence inconsistent with SBS and fabricated a cause of death as "blunt force head and neck trauma." She classified the manner of death as "homicide."

35.     Dr. Corneal's fabricated conclusion provided probable cause that a crime occurred.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

36. No reasonably well-trained pathologist acting in good faith would have concluded that the evidence supported that a crime occurred.

37. Dr. Corneal's conclusion was intentionally and deliberately false or made with reckless disregard for the truth. It was not the product of a mistake or oversight.

38. Dr. Corneal's fabricated evidence and false statements on the autopsy report was relied on by Santos and ultimately, the Clark County Prosecutor and Magistrate Judge who approved an arrest warrant for Plaintiff on July 26, 2019.

**Santos' Police Investigation**

39. On October 5, 2018, Defendant, Santos, interviewed Plaintiff and Mr. Davis to obtain a timeline of events of the previous few days and information about J.D.'s health since birth.

40. From the interviews with the parents, Santos learned that J.D., who was of mixed race, had been diagnosed with Sickle Cell Trait ("SCT"). She also learned that J.D. had been born premature and underweight.

41. Santos learned that Mr. Davis had a positive history for SCT.

42. Santos learned that the baby did not exhibit any signs of distress the day and evening before he was taken to the hospital.

43. Santos learned that the baby was sleeping when Plaintiff went to work at approximately 8:30 a.m. on October 5, 2018, after preparing a bottle of formula.

44. Santos learned that the baby began showing signs of distress in the morning after Plaintiff left for work.

45. Santos learned that the baby began showing signs of distress while in the care of Mr. Davis and that he called 911 to summon help.

46. Once armed with Dr. Corneal's fabricated evidence of a homicide, it was simply a matter of Santos deciding which parent (or both) to charge.

47. Despite all of the evidence showing that J.D. was not symptomatic of anything when Plaintiff left for work, Santos deliberately wrote the following false statements in her report:

    a. "Per the timeline provided, Kristina was the primary caregiver of [J.D.]"

b. "Kristina woke up the next morning leaving [J.D.] in the bed and pumped versus waking up the child to feed. [J.D.] was already symptomatic by this time."

c. "When Jaevone woke [J.D.] was already unresponsive."

d. "It has been determined that the mother, Kristina Kerlus, was responsible for the injuries that led to the death of her child, [J.D.]"

48.     On July 26, 2019, almost ten months after J.D.'s death, and despite no new evidence linking Plaintiff to the crime, Santos submitted an arrest warrant for Plaintiff only, charging her with murder, NRS 200.010, 200.030.1, 200.508 – NOC 50005; and Child Abuse, Neglect or Endangerment Resulting in Substantial Bodily Harm, "to wit: by causing head and/or neck trauma to the said J.D., resulting in brain and/or spinal cord hemorrhage [sic] by shaking the said J.D. or by manner and/means unknown."

49.     The Clark County prosecutor who recommended the murder warrant did not conduct an independent investigation of the case, instead relying on Defendants' representations to determine that probable cause existed for Plaintiff's arrest.

50.     On July 26, 2019, Plaintiff was arrested and charged with the murder of her infant son. When Plaintiff asked why she was being arrested, Santos responded *"because I had to charge one of you."*

## POST-ARREST DEVELOPMENTS

51.     Plaintiff's criminal attorney, Ryan Helmick, sought the assistance of a forensic pathologist, Dr. Evan Matshes, to review the autopsy findings of Dr. Corneal. Dr. Matshes was able to demonstrate that the cause of death was complications from SCT, and not head and neck trauma as described by Dr. Corneal. Dr. Matshes noted that "evaluation of the organs and tissues retained by the Clark County Coroner's Office demonstrated objective evidence of widespread sickling of red blood cells."

52.     Dr. Corneal's autopsy report did not mention sickling of any cells in microscopic examination of organs.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

53.    Dr. Matshes concluded that the only reasonable classification for the death was "Natural."

54.    In 2023, The Clark County Prosecutor's Office had Dr. Nathan Shaller of the Clark County Coroner's Office re-examine the evidence, including the autopsy slides first reviewed by Dr. Corneal.

55.    Dr. Shaller's report concluded:

> Acute intracranial bleeding with intradural venous thrombosis, not definitively related to trauma, and unexplained thromboemboli. Of note, spontaneous (atraumatic) intracranial thrombosis is a reported complication of sickle cell disease and other thrombophilic conditions. The role of sickle cell trait or disorders of clotting/hemolysis cannot be fully excluded. Also confounding is the reported history of two separate incidents of cardiopulmonary arrest with related hypoxic-ischemic injury; subsequent encephalopathy may cause the subdural hemorrhage and all intracranial findings in the absence of trauma …. As neither the role of an unsafe sleep environment nor the cause of the initial cardiopulmonary arrest can be definitively ascertained, the cause and manner of death are both classified as Undetermined.

56.    Based on Dr. Shaller's findings, coupled with those of Dr. Matshes, the Clark County Prosecutor's Office voluntarily dismissed criminal charges on or about December 19, 2022.

57.    The dismissal demonstrated that but for Dr. Corneal's fabricated findings and false statements and material omissions in J.D.'s autopsy report, probable cause that a crime occurred was lacking.

58.    Dismissal of the criminal charges constitutes a favorable termination of the criminal proceedings. *Thompson v. Clark*, 596 U.S. 36, 49; 142 S.Ct. 1332; 212 L.Ed.2d 382 (2022) (For favorable termination, "[a] plaintiff need only show that the criminal prosecution ended without a conviction.").

8

59.    From her arrest on July 26, 2019, to dismissal of criminal charges on December 19, 2022, Kristina Kerlus spent **1,243 days**, or **3 years, 4 months, and 24 days** illegally seized for crimes she did not commit.

**LVMPD'S History of Unconstitutional Policies and Practices**

60.    Officers and detectives of the LVMPD have a documented history of fabricating evidence and deliberately making false statements and omissions of material facts in order to manufacture probable cause.

61.    LVMPD officers and detectives have a constitutional obligation to refrain from fabricating evidence, making false statements, and omitting material facts when determining probable cause.

62.    LVMPD officers and detectives have a duty to make truthful disclosures to prosecutors and judges determining whether probable cause exists.

63.    Despite these standards and duties, LVMPD detectives and officers have a pattern of fabricating evidence, making false statements, omitting material facts, and suppressing exculpatory evidence in order to manufacture probable cause. What follows are several examples:

    a.    **Kirstin Blaise Lobato**: In 2001, the 18-year-old Lobato was wrongfully arrested and later convicted of a murder she did not commit. As a result of LVMPD detectives' fabrication, concealment, and distortion of evidence, Ms. Lobato spent sixteen years in prison for a crime she did not commit.

        i.    Several weeks after Ms. Lobato had been the victim of an attempted rape during which she defended herself by using a small knife to cut her assailant in the groin area, Duran Bailey was found murdered, severely beaten, and with his penis cut off.

        ii.    LVMPD detectives falsely linked these two events despite them occurring at different locations, weeks apart, and with almost no similarities. LVMPD detectives misled Ms. Lobato during an

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

interview, inserted facts about Bailey's murder which were unknown to her, selectively recorded portions of the interview, and misrepresented her account of the assault as a confession to Bailey's murder.

   iii.  LVMPD detectives also ignored, suppressed, and manipulated several witness statements attesting to the fact that Ms. Lobato was visiting family nearly two hours outside of Las Vegas in the days leading up to and when Bailey's body was discovered.

   iv.  In 2017, evidence showing that she had an uncontested alibi during the time Bailey was murdered led to her exoneration and eventual release the following year.

b.  **Jeffrey Port**: In 2005, LVMPD officer Eric Barros fabricated evidence, created false reports, and lied in a search warrant application, leading to the wrongful arrest of Port.

   i.  Barros was allocated department funds to conduct a controlled narcotics purchase from Mr. Port, whom he claimed was a large marijuana distributor.

   ii.  Barros had attempted and failed to purchase any drugs from Port on several occasions and instead used to funds to fuel his gambling addiction. Barros then fabricated evidence by submitting two bags containing a hay-like substance to evidence, claiming they were drugs purchased from Mr. Port.

   iii.  Barros detailed the false drug buy in a search warrant affidavit, which was subsequently approved by a judge. Mr. Port was then arrested, and felony drug charges were initiated against him based entirely on Barros' lies.

**PAUL PADDA LAW, PLLC**
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

c. **Keyherra Green**: In 2018, Keyherra Green was wrongly arrested for the murder of a man she had never met.

    i. Months prior to the murder, LVMPD officers conducted a welfare check on the murder victim at his home where they met the actual perpetrator, Keara Green.

    ii. In a recorded interaction, officers learned that Green was from Iowa, had a Texas drivers license, had two children, and had a large gap between her two front teeth.

    iii. When the murder victim's body was discovered in the same home they had previously visited, LVMPD detectives did not review the footage and instead identified Keyherra Green based off a previous arrest for trespassing in a nearby area.

    iv. Keyherra Green had a different birthdate, was not from Iowa, did not have a Texas drivers license, did not have two children, did not have a gap in her front teeth, and lived in Los Angeles.

    v. Keyherra Green was arrested on murder charges following a probable cause affidavit fabricating that the LVMPD detectives reviewed the bodycam footage identifying her as on the scene during the wellness check months prior.

    vi. Charges against Keyherra were dropped and she was released from custody after the bodycam footage was actually reviewed and the detectives fabrication as uncovered.

d. **Jesus Carvajal**: In 2018, Carvajal was wrongly arrested and charged with sexual assault, kidnapping, and impersonating an officer. As a result of the actions of LVMPD, Carvajal lost his job, car, home, partner, and suffered reputational damage as his arrest and charges were made public.

11

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

i. Several Las Vegas sex workers previously reported being assaulted and extorted by a man posing as a LVMPD officer.

ii. The victims described the perpetrator's physical appearance, vehicle, phone-number, and other details to officers. LVMPD detectives identified Carvajal based on his vehicle, which was a different model than that described by the victims.

iii. LVMPD detectives then mislead a judge in order to obtain an arrest and search warrant, falsely claiming that all victims had definitively identified Carvajal in a photo lineup. In actuality, only one victim identified Carvajal with certainty and another victim reported that she was certain none of the photos, including Carvajal's, depicted the suspect.

iv. Additionally, LVMPD detectives did not disclose that the victim who identified Carvajal with certainty called detectives shortly after to report that she had just seen the suspect soliciting women in downtown Las Vegas, at the same time Carvajal was being surveilled by police in his home.

v. LVMPD detectives mischaracterized photos of Carvajal and his professional paintball team to the judge as photos of Carvajal armed and wearing tactical police gear.

vi. When the real suspect was arrested, all charges against Carvajal were dropped and he was released from custody.

64.    The Las Vegas Metropolitan Police Department knew or should have known, prior to Plaintiff's arrest, that LVMPD's pattern and practice of unconstitutional evidence collection, analysis, disclosure, and deliberate manufacturing of probable cause has violated and would continue to violate its citizen's constitutional rights.

**Clark County Coroner's Office's History of Unconstitutional Policies and Practices**

12

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

65. Clark County and the Clark County Coroner's Office have a custom, policy, and practice of failing to adequately train, supervise, and or discipline employees concerning proper and constitutionally adequate evidence collection, analysis, and disclosure.

66. This custom, policy, and practice is evidenced by a history of employees of the Clark County Coroner's Office fabricating evidence and making false statements and omissions of material facts in reports prepared for and being disclosed to law enforcement personnel. What follows are several examples:

    a. **Christian Walker**: In 2023, Walker, an inmate at Southern Desert Correctional Center, died while in custody after being beaten by correctional officers on two separate occasions. The Clark County Coroner's Office fabricated the cause of Walker's death.

        i. After the first beating, Walker was hospitalized with severe injuries, including swollen and bruised eyes, uncontrolled bleeding from his scalp and face, and blunt force trauma on several parts of his body. After returning to the facility, Walker was again beaten by correctional officers and left in the infirmary cell.

        ii. The next morning, Walker was found deceased on the floor of the cell covered in blood. In the autopsy, the Clark County Coroner confirmed Walker's injuries, but ruled that he died of natural causes related to a heart issue.

        iii. Walker's family hired Dr. Larry Simms, a former Clark County Medical examiner, to do an independent evaluation. Dr. Simms found evidence that Walker's death was related to blunt force trauma, which directly contradicted the coroner's determination.

    b. **Patrick Odale**: In 2023, Odale, an inmate at Southern Desert Correctional Center, died while in custody. The Clark County Corner's Office falsely

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

claimed a major cause of Odale's death was trace amounts of drugs in his system in an attempt to conceal the force used by correctional officers.

    i.  Witnesses claim that he pleaded for medical help during an asthma attack before correctional officers beat, pepper-sprayed, and restrained him. Odale was taken to the infirmary following the incident and pronounced dead shortly after.

    ii.  An autopsy done by the Clark County Coroner's Office showed photos of bruises covering Odale's back, arms, wrists, and lips, but described the injuries as minor blunt force trauma. The coroner cited trace amounts of drugs in his system as a major contributor to his death.

    iii.  Upon information and belief, the coroner's office worked with prison officials to conceal the extent of Odale's injuries and downplay the force used by officers.

c.  **Allan Moore**: In 2023, Moore was charged with manslaughter in connection with the death of a woman from a drug overdose. Clar County Corner's Officer fabricated details of the woman's autopsy to advance the prosecution of Moore.

    i.  Moore was accused of selling the deceased woman drugs, which the Clark County Coroner's Office reported to have caused her death.

    ii.  Upon information and belief, Moore was targeted due to his criminal record and the coroner's office falsified the toxicology report to support his prosecution.

    iii.  Upon information and belief, Dr. Larry Simms, a former pathologist for Clark County, reviewed the case and found the coroner's conclusions were unsupported.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

    iv.   Simms claimed that the woman had an amount of cocaine in her system that would likely need to be ten times higher in order to cause an overdose, and that the amount of fentanyl in her system was so small it would be difficult to determine that it caused her death.

  d.  **Melissa Olteanu:** In 2022, the Clark County Coroner's Office falsified the autopsy report of Olteanu's late husband.

    i.   In 2022, Olteanu's daughter found her husband deceased on the floor of their house, lying in a pool of blood with his head underneath a chair and with a hammer nearby.

    ii.   The Clark County Coroner's report listed his cause of death as a heart attack due to cardiomyopathy. The only physical injury noted in the report is a small abrasion on the deceased's lip, ignoring the large pool of blood he was found in.

    iii.  The coroner's office denied Olteanu's requests for unredacted photos of her husband's body showing his face.

67.    Clark County, on and before October 8, 2018, knew or should have known of the illegal and unconstitutional actions of the Clark County Coroner's Office and its employees. Despite this pattern of unconstitutional actions, Clark County did not train, supervise, and or discipline employees concerning proper and constitutionally adequate evidence collection, analysis, and disclosure, including the duty not to fabricate evidence, and to make candid and truthful disclosures in their reports.

68.    The individual Defendants, and the policies and customs of LVMPD and Clark County as set forth herein, were a direct and proximate cause of Plaintiff's injuries and damages, including:

  a.  Suffering a deprivation of liberty by being wrongfully seized, jailed, and restricted from freedom of movement for a period of over three years;

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

b. Severe emotional distress for the period from her arrest to the present, including, but not limited to: the emotional distress of being charged with the murder of her baby and facing a sentence of life in prison without the possibility of parole; and faced with a criminal trial for crimes she did not commit;

c. Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

d. Fright, shock, indignity, humiliation, outrage, and embarrassment of being wrongfully charged of murder;

e. Loss of custody of her other children;

f. Loss of enjoyment of daily activities;

g. Loss of employment opportunity, past income, and future earning capacity;

h. Many of Plaintiff's injuries and damages are likely to be permanent;

i. Other damages which may be revealed through discovery.

**COUNT I**
**14TH AMENDMENT "FABRICATION**
**OF EVIDENCE" BY DEFENDANT DR. CORNEAL**

69.     Plaintiff Incorporates by reference each preceding paragraph as if fully stated herein.

70.     At all times, Plaintiff had a clearly established constitutional right, secured by the Fourteenth Amendment, not to be subjected to criminal charges based on false evidence that was deliberately fabricated by the government. *See Deveraux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.")

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

71.     Dr. Corneal deliberately and knowingly fabricated evidence to manufacture probable cause for an arrest warrant. Her fabrication included reporting that J.D. died because of "blunt force head and neck trauma," and classifying the manner of death as "homicide."

72.     Dr. Corneal knew that the physical evidence from the autopsy could not rule out complications from SCT and knew that manner of death should have been listed as "Natural" or, at the very least, "Undetermined," neither of which would support criminal charges.

**COUNT II**
**4TH AMENDMENT MALICIOUS**
**PROSECUTION BY DEFENDANT DR. CORNEAL**

73.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

74.     At all times, Plaintiff had a clearly established constitutional right, secured by the 4th Amendment, not to be seized and deprived of liberty because of knowingly or recklessly made false statements or material omissions by a government official to manufacture probable cause. *See Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (It was clearly established that an individual has a right not to be seized based on false statements in warrant requests that were intentionally made or made with reckless disregard for their truth and were necessary for a finding of probable cause).

75.     Defendant, Dr. Corneal, influenced or participated in the initiation of criminal prosecution and continued detention when she deliberately and knowingly fabricated evidence and made false statements and material omissions of facts, which were material to the finding of probable cause and Plaintiff's seizure and continued detention.

76.     But for Dr. Corneal's fabrication of evidence and deliberate false statements and material omissions in her autopsy report, probable cause *that a crime occurred* would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) ("[A] coroner's reckless or intentional falsification of an autopsy report that plays a material role in the

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

false arrest and prosecution of an individual can support a claim under § 1983 and the Fourth Amendment.").

77.    Plaintiff's cause of action for federal malicious prosecution became complete when criminal charges were dismissed on December 19, 2022.  Dismissal of the criminal charges constitutes a favorable termination of the criminal case.

## COUNT III
## 4TH AMENDMENT MALICIOUS
## PROSECUTION BY DEFENDANT SANTOS

78.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

79.    At all times, Plaintiff had a clearly established constitutional right, secured by the 4th Amendment, not to be seized and deprived of liberty because of knowingly or recklessly made false statements or material omissions by a police officer to manufacture probable cause. *See Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (It was clearly established that an individual has a right not to be seized based on false statements in warrant requests that were intentionally made or made with reckless disregard for their truth and were necessary for a finding of probable cause).

80.    Defendant, Santos, influenced or participated in the initiation of criminal prosecution and continued detention when she deliberately and knowingly made false statements and material omissions of facts which were material to the finding of probable cause and caused Plaintiff's seizure and continued detention.

81.    But for Santos' deliberate false statements and material omissions in her police report and warrant request, probable cause *that Plaintiff committed a crime* would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

82.    Plaintiff's cause of action for federal malicious prosecution became complete when criminal charges were dismissed on December 19, 2022.  Dismissal of the criminal charges constitutes a favorable termination of the criminal case.

### COUNT IV
### "*MONELL*" LIABILITY OF CLARK COUNTY

83.    Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

84.    As described in the preceding paragraphs, the conduct of Defendant Dr. Corneal toward the Plaintiff, constituted malicious prosecution in violation of the Fourth Amendment to the United States Constitution.

85.    The misconduct described in this Complaint was undertaken pursuant to the policies and practices of Clark County, such that Clark County is liable, in that

a.    As a matter of both policy and practice, Clark County encouraged, and was thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control, and discipline its employees and agents such that its failures manifest deliberate indifference.

b.    As a matter of both policy and practice, the Clark County facilitated the very type of misconduct at issue here by failing adequately to investigate, punish, and discipline prior instances of similar misconduct, thereby leading Clark County employees and agents to believe their actions are unlikely ever to be meaningfully scrutinized and, in that way, directly encouraging future Fourth Amendment violations of malicious prosecution, such as those Plaintiff complains of.

c.    As a matter of widespread practice so prevalent and well-established as to compromise municipal policy, employees and agents of Clark County knowingly and deliberately made false statements and/or recklessly

19

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

omitted material facts when investigating civilians for alleged criminal activity, which was authorized, condoned, tolerated, and approved by the Clark County municipal corporation.

86.     As a result of Clark County's policies and practices and unjustified conduct of Defendant Dr. Corneal in this case, Plaintiff was maliciously prosecuted in violation of the Fourth Amendment to the United States Constitution.

87.     As a direct and proximate result of Clark County's policies and practices as described in this Complaint, Plaintiff suffered a deprivation of liberty by being wrongfully seized, jailed, and restricted from freedom of movement for a period of over three years.

88.     As a direct and proximate result of Clark County's policies and practices as described in this Complaint, Plaintiff experienced severe emotional distress.

89.     As a direct and proximate result of the acts and omissions of Defendant Dr. Corneal and Clark County described in this Complaint, Plaintiff suffered compensatory and special damages in an amount to be determined by a jury.

90.     Plaintiff is entitled to recovery of costs and reasonable attorneys' fees as prescribed under 42 U.S.C. § 1988.

### COUNT V
### "*MONELL*" LIABILITY OF THE LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD")

91.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

92.     As described in the preceding paragraphs, the conduct of Defendant Santos toward the Plaintiff, constituted malicious prosecution in violation of the Fourth Amendment to the United States Constitution.

93.     The misconduct described in this Complaint was undertaken pursuant to the policies and practices of the LVMPD, such that the LVMPD is liable, in that

a.     As a matter of both policy and practice, the LVMPD encouraged, and was thereby the moving force behind, the very type of misconduct at issue here

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

by failing to adequately train, supervise, control, and discipline its employees and agents such that its failures manifest deliberate indifference.

b.  As a matter of both policy and practice, the LVMPD facilitated the very type of misconduct at issue here by failing adequately to investigate, punish, and discipline prior instances of similar misconduct, thereby leading LVMPD employees and agents to believe their actions are unlikely ever to be meaningfully scrutinized and, in that way, directly encouraging future Fourth Amendment violations of malicious prosecution, such as those Plaintiff complains of.

c.  As a matter of widespread practice so prevalent and well-established as to compromise municipal policy, employees and agents of LVMPD knowingly and deliberately made false statements and/or recklessly omitted material facts when investigating civilians for alleged criminal activity, which was authorized, condoned, tolerated, and approved by the LVMPD.

94.  As a result of the LVMPD policies and practices and unjustified conduct of Defendant Santos in this case, Plaintiff was maliciously prosecuted in violation of the Fourth Amendment to the United States Constitution.

95.  As a direct and proximate result of LVMPD's policies and practices as described in this Complaint, Plaintiff suffered a deprivation of liberty by being wrongfully seized, jailed, and restricted from freedom of movement for a period of over three years.

96.  As a direct and proximate result of the LVMPD policies and practices as described in this Complaint, Plaintiff experienced severe emotional distress.

97.  As a direct and proximate result of the acts and omissions of Defendant Santos and LVMPD described in this Complaint, Plaintiff suffered compensatory and special damages in an amount to be determined by a jury.

PAUL PADDA LAW, PLLC
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

98.     Plaintiff is entitled to recovery of costs and reasonable attorneys' fees as prescribed under 42 U.S.C. § 1988.

### COUNT VI
### STATE LAW MALICIOUS PROSECUTION BY
### DEFENDANTS DR. CORNEAL SANTOS

99.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

100.    The underlying criminal proceedings against Plaintiff terminated in her favor with the dismissal of the charges in state court on or about December 19, 2022.

101.    The criminal investigation and prosecution were undertaken without probable cause or good faith, and with malice. NRS 199.310. They were not undertaken with the intention of bringing Plaintiff to justice for having committed the alleged murder of her child. Instead, the individual Defendants acted to frame Plaintiff for murder and child abuse by fabricating evidence of a crime relating to the natural death of her son. Defendants' malice was evidenced in at least the following ways:

   a.  By Dr. Corneal reporting that the baby's death was the result of "blunt force head and neck trauma," and classifying the death as a homicide, when any reasonably competent and trained forensic medical examiner would have realized that the death was caused by complications of SCT and would necessarily have to be classified as "Natural."

   b.  By Santos falsely stating in her report that evidence suggested Plaintiff committed the acts that caused the baby's death, when the clear evidence was that she was at work when the baby began exhibiting signs of distress.

   c.  By Santos falsely stating that Plaintiff was the primary caregiver of the baby when he became "symptomatic" and that by the time J.D.'s father awoke, J.D. was "already unresponsive."

   d.  By Santos deciding to arbitrarily seek Plaintiff's arrest instead of the baby's father "because [she] had to charge one of you."

22

1    102.    As a direct and proximate result of Defendants' malicious prosecution, Plaintiff

2    was charged with crimes she did not commit, causing her to suffer the special injuries and

3    damages set forth above.

4    ///

5    ///

6    ///

7    ///

8    ///

9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

**PAUL PADDA LAW, PLLC**
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

1

**PRAYER FOR DAMAGES**

2

WHEREFORE, Plaintiff, KRISTINA KERLUS, prays for damages, jointly and severally

3

as to all Defendants, including:

4

a. Past and future compensatory damages, jointly and severally against all Defendants in

5

an amount to be determined by the jury;

6

b. Punitive damages as against Defendant, Dr. Corneal;

7

c. Punitive damages as against Defendant, Santos;

8

d. Reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

9

e. The costs and disbursements of this action pursuant to 42 U.S.C.§ 1920;

10

f. All damages allowed under Nevada law; and,

11

g. Such other and further relief as appears just and proper.

12

13

DATED this 14th day of October, 2025.

14

15

16

17

By:    /s/*Patrick J. Driscoll*
_____
Patrick J. Driscoll

18

Attorney for Plaintiff

19

20

21

22

23

24

25

26

27

28

**PAUL PADDA LAW, PLLC**
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

1

2

3

4

5

6

7

8

9

10

**PAUL PADDA LAW, PLLC**
4560 South Decatur Boulevard, Suite 300
Las Vegas, Nevada 89103
Tele: (702) 366-1888 • Fax (702) 366-1940

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REQUEST FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b) and 42 U.S.C. §1981a, Plaintiff demands a trial by jury in this action on all issues so triable.

DATED this 14th day of October, 2025.

By:  _____
/s/ *Patrick J. Driscoll*

Patrick J. Driscoll

Attorney for Plaintiff