**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KRISTINA KERLUS,

Plaintiff

v.

JENNIFER CORNEAL, et al.,

Defendants

Case No.: 2:24-cv-02352-APG-DJA

**Order Granting in Part Defendants' Motions to Dismiss**

[ECF Nos. 74, 75]

Kristina Kerlus sues Clark County and its coroner Dr. Jennifer Corneal (the Clark County defendants) as well as the Las Vegas Metropolitan Police Department (LVMPD) and LVMPD police officer Angie Santos (the LVMPD defendants) based on her alleged wrongful arrest after the death of her infant son, J.D. Kerlus brings five claims under 42 U.S.C. § 1983. She alleges that Dr. Corneal fabricated evidence in violation of the Fourteenth Amendment (Count I); Dr. Corneal (Count II) and Officer Santos (Count III) maliciously prosecuted her in contravention of the Fourth Amendment; and Clark County (Count IV) and LVMPD (Count V) are responsible for their employees' unconstitutional misconduct. She also sues Dr. Corneal and Officer Santos for malicious prosecution under Nevada law (Count VI).

The LVMPD defendants and the Clark County defendants each move to dismiss. ECF Nos. 74; 75. The LVMPD defendants argue that Kerlus's malicious prosecution claims have not accrued, her Nevada malicious prosecution claim is untimely under a state law notice requirement, and Kerlus has not plausibly alleged LVMPD's liability under *Monell*.[1] The Clark County defendants argue that Dr. Corneal is entitled to qualified immunity for the federal claims. They also contend that discretionary immunity and the public duty doctrine bar liability for the

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

state law claim. Finally, they assert that Kerlus has not plausibly alleged Clark County's liability under *Monell*. Clark County also joins LVMPD's dismissal arguments. ECF No. 76.

I dismiss Counts IV and V because Kerlus has not plausibly alleged that LVMPD and Clark County each maintained a policy that amounted to a deliberate indifference to her constitutional rights. But the defendants failed to show that dismissal is warranted based on their accrual and untimeliness arguments. I deny the Clark County defendants' remaining challenges based on qualified immunity, discretionary immunity, or the public duty doctrine. Finally, I grant Kerlus leave to amend her complaint, consistent with this order, to address the deficiencies in Counts IV and V.

## I. BACKGROUND[2]

### A. J.D.'s Passing

On October 5, 2018, Kerlus prepared a bottle of formula and departed for work at around 8:30 a.m. while twelve-week-old J.D. remained sleeping. ECF No. 68 at 3. J.D.'s father, Jaevone Davis, awoke about an hour later and discovered J.D. crying. *Id.* Davis found J.D.'s behavior unusual and called Kerlus and emergency services. *Id.* The police dispatcher instructed Davis to perform chest compressions, which he did, until paramedics arrived and transported J.D. to a hospital because he was in cardiac arrest. *Id.*

Hospital staff diagnosed J.D. with a brain bleed and became concerned that he exhibited symptoms of shaken baby syndrome. *Id.* at 3–4. J.D. exhibited no scalp swelling, skull fractures, or definite bleeding within the brain tissue, but a CT scan indicated fluid consistent with a subdural hemorrhage, diffuse subarachnoid hemorrhage, and potential brain swelling. *Id.*

[2] I take these facts from the second amended complaint and accept them as true for purposes of resolving the motions to dismiss.

Hospital staff contacted LVMPD and Child Protective Services. *Id.* at 4. J.D. was transported to a different hospital for further care and passed away at that facility two days later. *Id.* at 4.

LVMPD Officer Santos interviewed Kerlus and Davis. *Id.* at 6. Officer Santos learned that nothing unusual occurred in the days leading up to the incident and that J.D. was diagnosed with Sickle Cell Trait (SCT). *Id.* Officer Santos determined that Kerlus was J.D.'s "primary caregiver." *Id.* According to Kerlus, Officer Santos then deliberately wrote in her report, despite evidence to the contrary, that J.D. "was already symptomatic" before Kerlus left; that when Davis awoke, J.D. "was already unresponsive"; and that "Kerlus[ ] was responsible for the injuries that led to the death of her child." *Id.* at 6–7.

**B. The Autopsy**

Dr. Corneal performed J.D.'s autopsy. *Id.* at 4. She reviewed records from both hospitals and observed that there were "no outward signs of trauma to explain [J.D.] being in medical distress." *Id.* Dr. Corneal was aware that hospital staff had expressed concern that J.D. exhibited shaken baby syndrome. *Id.* She was also aware of a September 18, 2018 incident where J.D. had been observed to have a cut and bruise on his leg and that J.D. exhibited behavioral changes following that incident. *Id*. Further, Dr. Corneal knew that J.D. had pulmonary hypertension and had been ill and vomiting in the weeks prior to October 5, 2018. *Id.* at 5.

Dr. Corneal's findings included the following. J.D. had "extensive subdural and subarachnoid hemorrhage with associated cerebral edema and herniation," "subdural hemorrhage down the length of [his] spinal cord," "hemorrhage of the posterior aspect of the eye and within the optic nerves," and "extensive retinal and sub-retinal hemorrhages, optic nerve sheath hemorrhage and optic nerve edema bilaterally, as well as focal early necrosis of the left optic nerve." *Id.* at 4–5. J.D. had healing rib fractures. *Id.* at 5. J.D. did not exhibit diffuse axonal

injury, which arises from a whiplash-like shaking or head trauma. *Id.* She observed that J.D.'s heart was abnormally large but did not attribute significance to this observation. *Id.* Dr. Corneal also conducted a microscopic analysis of J.D.'s organs but did not document the SCT condition, despite obvious evidence of it in his organs. *Id.*

Dr. Corneal found that J.D. exhibited "Shaken Baby Syndrome" or "Abusive Head Trauma." *Id.* Kerlus contends that Dr. Corneal consciously ignored the evidence inconsistent with that syndrome. *Id.* Dr. Corneal classified J.D.'s cause of death as "blunt force head and neck trauma" and his manner of death a "homicide." *Id.* These findings were relied upon by LVMPD, the Clark County prosecutor, and the judge who approved the arrest warrant for Kerlus. *Id.* at 6. No further evidence was discovered to link Kerlus to her son's death. *Id.* at 7.

**C. Kerlus's Arrest and the Underlying Criminal Proceedings**

On July 26, 2019, Officer Santos submitted an arrest warrant for Kerlus, charging her with murder and child abuse, neglect, or endangerment resulting in substantial bodily harm. *Id.* at 7. The prosecutor who recommended the warrant did not conduct an independent investigation of the case. *Id.* Kerlus asked why she was being arrested, and Officer Santos responded, "because I had to charge one of you." *Id.* (emphasis removed).

Kerlus requested a forensic pathologist, Dr. Evan Matshes, to review Dr. Corneal's autopsy report. *Id.* at 7. Dr. Matshes found that J.D.'s death was caused by complications from his SCT condition (i.e., "Natural"), reasoning that "evaluation of the organs and tissues retained by the Clark County Coroner's Office demonstrated objective evidence of widespread sickling of red blood cells." *Id.* at 7–8.

The Clark County Prosecutor's Office requested Dr. Nathan Shaller of the Clark County Coroner's Office to examine the evidence. *Id.* at 8. He found that J.D.'s "[a]cute intracranial

bleeding" was "not definitively related to trauma."[3] *Id.* He further reasoned that "[t]he role of sickle cell trait or disorders of clotting/hemolysis cannot be fully excluded." *Id.* Dr. Shaller highlighted that "the reported history of two separate incidents of cardiopulmonary arrest with related hypoxic-ischemic injury" was confounding because the "subsequent encephalopathy may cause the subdural hemorrhage and all intracranial findings in the absence of trauma." *Id.* at 8. He recommended that J.D.'s cause and manner of death be classified as "Undetermined" because the role of an "unsafe sleep environment" or the "initial cardiopulmonary arrest" cannot be "definitely ascertained." *Id.*

Based on Dr. Shaller's and Dr. Matshes's findings, the Clark County Prosecutor's Office voluntarily dismissed Kerlus's criminal charges without prejudice before the case proceeded to trial. *Id.*; ECF No. 74-2 at 17–18.[4] The presiding judge granted the dismissal without prejudice and later denied Kerlus's motion to dismiss the case with prejudice. ECF No. 74-2 at 18–19.

## II. LEGAL STANDARD

In reviewing a motion to dismiss, I take all well-pleaded "allegations of material fact as true and construe them in a light most favorable to the non-moving party." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quotation omitted). I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted).

---

[3] The second amended complaint contains a typographical error. It states that in 2023, the Clark County Prosecutor's Office requested Dr. Shaller to re-examine the evidence, but then it states that based on Dr. Shaller's findings, the prosecution dropped the charges on December 19, 2022. ECF No. 68 at 8. Kerlus is encouraged to correct this error if she amends her complaint.

[4] *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." (quotation omitted)).

To defeat a motion to dismiss, a plaintiff must state sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, the complaint must include "a short and plain statement of the claim" demonstrating that the plaintiff "is entitled to relief" and providing the defendants with "fair notice of what the claim is and the grounds upon which it rests." *Id.* (simplified).

I must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). I apply this policy "with extreme liberality," but I may deny amendment if it would be futile. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (quotation omitted).

## III. ANALYSIS

### A. The defendants have not met their burden to demonstrate that Kerlus's malicious prosecution claims have not yet accrued.

To bring a malicious prosecution claim under § 1983 and state law, Kerlus must show that the criminal proceedings terminated in her favor. The defendants contend that because the charges against Kerlus were dismissed without prejudice, she cannot show the proceedings terminated in her favor. Kerlus responds that the dismissal of the charges without prejudice constitutes a favorable termination of the proceedings under *Thompson v. Clark*, 596 U.S. 36 (2022).

To plead a malicious prosecution claim under Nevada law, Kerlus must plausibly allege that (1) the defendants lacked probable cause to initiate her prosecution; (2) the defendants acted with malice; (3) the prior criminal proceedings were terminated in her favor; and (4) she suffered

damages. *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002); *see also Dutt v. Kremp*, 894 P.2d 354, 357 (Nev. 1995), *overruled on other grounds by LaMantia*, 38 P.3d at 880. A claim for malicious prosecution under § 1983 requires Kerlus to allege those same elements, with the additional element that the defendants prosecuted her for the purpose of denying her a "specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066, 1068 (9th Cir. 2004) (quotation omitted).

1. <u>The defendants have not shown that the § 1983 claim failed to accrue.</u>

The dismissal must be both favorable to Kerlus and constitute a termination of the proceedings. *Brown v. Darcy*, 552 F. App'x 730, 731 (9th Cir. 2014) (citing *LaMantia*, 38 P.3d at 879); *Dutt*, 894 P.2d at 357. "[F]ederal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1154 (9th Cir. 2000); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (stating that "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" (emphasis omitted)). I therefore look to federal law to resolve both issues.

I agree with Kerlus that, under *Thompson*, the dismissal of her charges without prejudice is favorable to her. In *Thompson*, the plaintiff was subject to criminal charges and detention, and the charges were voluntarily dismissed prior to trial. 596 U.S. at 40. Neither the prosecutor nor the presiding judge explained why the charges were dropped. *Id.* The Supreme Court held that such a dismissal was sufficient to be a favorable outcome for the plaintiff under § 1983 because "[t]he question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed." *Id.* at 48. I therefore conclude that the voluntary dismissal of Kerlus's charges without prejudice was a favorable outcome to her under *Thompson* as nothing more is required. *See id.* (stating that a

plaintiff in a § 1983 malicious prosecution suit does not need to "show that his prosecution ended with an affirmative indication of innocence").

But *Thompson* does not resolve the question of whether the underlying criminal proceedings terminated. The Supreme Court did not specifically rule whether a dismissal of charges without prejudice constitutes a termination of the criminal proceedings for purposes of a malicious prosecution claim.[5] 596 U.S. at 39–41. Nor did the Court examine whether such a dismissal constitutes a termination as to murder charges, which are not subject to a statute of limitations and thus may be refiled at any point. Nevada Revised Statutes (NRS) § 171.080. The Ninth Circuit has also not directly addressed such circumstances.

In consideration of the unsettled nature of this issue, I conclude that the defendants have not met their initial burden as the moving parties to show that the criminal proceedings against Kerlus did not terminate.[6] The Ninth Circuit has not endorsed a categorical rule for assessing whether criminal proceedings have terminated under § 1983; rather, the inquiry is fact intensive. *Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015). In *Bradford*, the Ninth Circuit

---

[5] The factual record about why the charges against the *Thompson* plaintiff were dismissed was murky. *See Thompson v. Clark*, 364 F. Supp. 3d 178, 185–90 (E.D.N.Y. 2019). The district court did not focus on whether the dismissal was with or without prejudice. Rather, it was concerned with Second Circuit law at the time that required a malicious prosecution plaintiff to show that his criminal case "ended in a manner that affirmatively indicates his innocence." *Id.* at 195 (quotation omitted). The district court found that the plaintiff's "malicious prosecution claim should be treated as if it was on the merits—i.e., the defendant was not guilty. An ambiguous state dismissal should be accepted as being based on non-guilt, in part because of the assumption of innocence before conviction." *Id.* at 197. The Supreme Court likewise did not focus on whether the dismissal was with or without prejudice. Indeed, the word "prejudice" does not appear in the majority opinion.

[6] *See Sintigo v. Pompeo*, No. 2:19-cv-00465-APG-VCF, 2020 WL 14053449, at *3 (D. Nev. July 20, 2020); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (holding that on a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented"); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) (holding that "on a 12(b)(6) motion, the moving party bears the burden of demonstrating that the plaintiff failed to state a claim").

found persuasive a sister circuit's reasoning that a malicious prosecution claim cannot accrue under § 1983 "until the proceedings against the plaintiff have terminated in such manner that [they] cannot be revived." *Id.* (quotation omitted). The Ninth Circuit held that a fabrication of evidence claim brought by a plaintiff whose conviction had been vacated with leave for the prosecution to pursue a new trial could not accrue until the "charges were fully and finally resolved and could no longer be brought against [the plaintiff]." *Id.* at 388–89. But the Ninth Circuit clarified that "the result may be different under other factual circumstances." *Id.* at 388. As explained below, the defendants have not adequately addressed the circumstances at play in Kerlus's case.

The Supreme Court has also explained that the termination requirement under § 1983 is essential to "avoid[ ] parallel litigation over the issues of probable cause and guilt . . . and . . . the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (simplified). "These concerns track similar concerns for finality and consistency that have motivated [the] Court to refrain from multiplying avenues for collateral attack on criminal judgments through civil tort vehicles such as § 1983." *McDonough v. Smith*, 588 U.S. 109, 118 (2019) (quotation omitted); *see Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 955 (9th Cir. 2022). Similarly, the defendants have not adequately analyzed whether these concerns are present in Kerlus's situation.

Finally, I find instructive *Jones v. Clark County*, 959 F.3d 748 (6th Cir. 2020), *abrogated on other grounds by Thompson*, 596 U.S. 36.[7] *See also Brown v. Louisville-Jefferson Cnty.*

[7] Specifically, the *Thompson* court rejected the rule that the Sixth Circuit applied in *Jones* that a malicious prosecution plaintiff must prove that the prior prosecution ended with some affirmative indication of his innocence. 596 U.S. at 47–48; *Jones*, 959 F.3d at 763–64.

*Metro Gov't*, 135 F.4th 1022, 1031 (6th Cir. 2025). The Sixth Circuit explained that "[c]ategorically construing the favorable termination requirement to exclude plaintiffs whose cases were dismissed without prejudice would undermine the ability of malicious prosecution claims to hold officials accountable for baseless legal proceedings simply because those proceedings ended prior to a verdict." *Jones*, 959 F.3d at 765. The Sixth Circuit, like the Ninth Circuit, thus endorsed a fact-specific approach for assessing termination. Relevantly, the Sixth Circuit reasoned that if the government abandoned a prosecution due to conviction becoming "improbable" then the concerns for collateral attack of a criminal judgment are absent. *Id.* at 764 ("The fact that the government recognized its error and moved to dismiss charges before a trial could be conducted or completed should not bar a subsequent malicious prosecution claim."). The Sixth Circuit further observed that application of a categorical rule to "exclude plaintiffs whose cases were dismissed without prejudice" would "weaken the protections and deterrence provided by § 1983 and effectively deny an entire class of plaintiffs a remedy for their constitutional violations." *Id.* at 765.

Here, the defendants have not sufficiently shown that the concerns for parallel litigation and the potential for collateral attack of a criminal conviction are more than minimal. Kerlus has plausibly alleged that a future prosecution is improbable because the prosecution abandoned the case against her after review of the second autopsy report prepared by the Clark County Coroner's Office. Moreover, the defendants have not adequately addressed the conundrum posed by a ruling that a voluntary dismissal can never constitute a termination of the proceedings under § 1983 in a murder case. Because murder has no statute of limitations, that would leave a plaintiff like Kerlus permanently barred from relief under this civil rights statute, as the prosecution could reopen the case at any point in the future due to the nature of the charges. This

would undermine the protections set forth in § 1983. *See Jones*, 959 F.3d at 765. For these reasons, the defendants have not met their initial burden to show that dismissal of Kerlus's charges without prejudice does not constitute a termination in her favor under the circumstances of this case. So I deny the defendants' motion to dismiss as to Counts II, III, IV, and V on these grounds.[8]

2. <u>The defendants fail to meet their burden to show that the malicious prosecution claims under Nevada law did not accrue.</u>

The defendants also fail to show that Kerlus's malicious prosecution claim did not terminate in her favor under Nevada law. The defendants have not argued that Nevada would deviate from *Thompson*. Furthermore, the defendants have failed to explain why the voluntary dismissal of charges without prejudice would not satisfy the applicable standard under Nevada law where the plaintiff has plausibly alleged a future prosecution is improbable. *See generally Manansingh v. United States*, No. 2:20-CV-01139-DWM, 2024 WL 1638638, at *7 (D. Nev. Apr. 15, 2024), *motion to certify appeal denied*, No. 2:20-CV-01139-DWM, 2024 WL 4647707 (D. Nev. Oct. 31, 2024) (observing that *Thompson* "does not alter the state law requirements for 'favorable termination.'"). Thus, I deny the defendants' motion to dismiss as to Count VI on these grounds.

/ / / /

/ / / /

/ / / /

[8] In their joinder, the Clark County defendants did not challenge the accrual of the § 1983 fabrication of evidence claim based on Dr. Corneal's conduct (Count I), which is not addressed in the LVMPD defendants' motion. *See* ECF No. 76. Clark County therefore has not met its burden to demonstrate this claim has not accrued. *See McDonough*, 588 U.S. at 124.

**B. The defendants have not met their burden to invoke NRS § 41.036(2) and bar Kerlus's malicious prosecution claims under Nevada law.**

The defendants contend that Kerlus's state law malicious prosecution claims are foreclosed because she failed to comply with NRS § 41.036(2). That statute requires "[e]ach person who has a claim against any political subdivision of the State [of Nevada] arising out of a tort [to] file the claim within 2 years after the time the cause of action accrues with the governing body of that political subdivision." The LVMPD defendants contend that Kerlus's filing of her complaint, undisputably within the two-year period, is insufficient to constitute notice to Officer Santos and LVMPD under this provision because service to the LVMPD's governing body is required, which the defendants assert did not timely occur.[9] Kerlus disagrees, arguing that her timely filing of the complaint was sufficient to comply with NRS § 41.036(2).

The defendants have not shown that NRS § 41.036(2) applies. The LVMPD defendants have presented nothing to support a determination that they qualify as a "political subdivision of the State," a prerequisite to invoking the statute. NRS § 41.036(2). For example, they have not addressed Ninth Circuit authority rejecting application of this "administrative claim statute . . . against defendants sued in their individual capacity." *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 965 (9th Cir. 2020). They have also not addressed that LVMPD is not identified as a "political subdivision" in the applicable statute. *See* N.R.S. § 41.0305 (listing other such entities). Nor have they addressed authority from the Supreme Court of Nevada, which has characterized LVMPD as "a local governmental department," reasoning that it failed to "persuasively argue[ ] that it is a corporate district constituting a political subdivision" under a

[9] Kerlus filed the present suit on December 17, 2024. ECF No. 1. She did not serve the defendants before March 20, 2025. ECF No. 20 at 2.

different statute. *Matter of Pub. Recs. Requests to Las Vegas Metro. Police Dep't*, 569 P.3d 624, 631 (Nev. 2025) (en banc). The Clark County defendants joined the LVMPD defendants' motion without addressing how this statute applies to them, so they have failed to meet their burden as well. *See* ECF No. 76. I deny the motion to dismiss Count VI on these grounds.

**C. Dr. Corneal is not shielded by discretionary immunity or the public duty doctrine.**

The Clark County defendants argue that the state malicious prosecution claim cannot proceed against Dr. Corneal because she is shielded from liability under discretionary immunity and the public duty doctrine. But as Kerlus points out, neither defense applies to the intentional tort of malicious prosecution. *See Angel v. Eldorado Casino, Inc.*, No. 59401, 129 Nev. 1095, 2013 WL 1116822, at *1 (Nev. Mar. 15, 2013) (explaining that malicious prosecution is an intentional tort); *Clark Cnty. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 570 P.3d 135, 147 (Nev. 2025) (en banc) (acknowledging that the "discretionary-act immunity [defense] does not apply to intentional torts"); NRS § 41.0336 (indicating that the public duty doctrine is available only for "negligent acts of omissions"). I therefore deny the Clark County defendants' motion.

**D. Dr. Corneal is not entitled to qualified immunity.**

Dr. Corneal contends that Kerlus cannot establish that the autopsy report findings resulted in a clearly established constitutional violation. Dr. Corneal reasons that Kerlus "has simply not provided sufficient factual allegations that [she] fabricated the theory of shaken baby syndrome" and, therefore, she cannot be held liable under the fabrication of evidence and malicious prosecution claims under § 1983. ECF No. 75 at 10. Kerlus responds that she has plausibly alleged that Dr. Corneal "deliberately and knowingly fabricated evidence in [the]

autopsy findings that was used to manufacture probable cause against [her]." ECF No. 85 at 9 (quotation omitted).

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quotation omitted). "Under the doctrine of qualified immunity, [public officials] are not liable under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023) (quotation omitted). I may "approach the qualified immunity question using either prong as [the] starting point." *Id.*

1. <u>Kerlus has plausibly alleged that Dr. Corneal violated her Fourteenth and Fourth Amendment rights.</u>

a. <u>Fourteenth Amendment rights</u>

A "coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (analyzing this issue in the context of a Fourth Amendment malicious prosecution claim). To state a § 1983 claim of deliberate fabrication, Kerlus must plausibly allege that (1) Dr. Corneal "deliberately fabricated evidence and (2) the deliberate fabrication caused [her] deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Deliberate fabrication occurs when evidence that would help exonerate a § 1983 plaintiff is omitted from a forensic report either deliberately or in reckless disregard for the truth. *See Galbraith*, 307 F.3d at 1126–27 (analyzing a coroner's decision to ignore "abundant evidence" pointing to another cause of death); *Pierce v. Gilchrist*, 359 F.3d 1279, 1293–94 (10th Cir. 2004) (analyzing when a forensic chemist

"maliciously withheld exculpatory evidence and fabricated inculpatory evidence" in a hair analysis).

Here, Kerlus has plausibly alleged that Dr. Corneal acted at least recklessly when failing to address the evidence that undermined the inference that J.D. perished from shaken baby syndrome. Kerlus pleaded that Dr. Corneal failed to (1) give any weight to J.D.'s heart abnormality; (2) reconcile J.D.'s hypertension and illness in the weeks prior to his death; and (3) document the evidence of SCT in his organs. Kerlus also alleged that Dr. Corneal knew but disregarded that SCT could lead to J.D.'s condition, and that she observed that J.D. lacked outward trauma and the indicia of abusive head trauma yet ignored such evidence. These allegations plausibly establish that Dr. Corneal's "methodology or judgment [was] so clearly flawed that [s]he should have harbored serious doubts about the reliability of [her] resulting opinion." *Burke v. Town of Walpole*, 405 F.3d 66, 92 (1st Cir. 2005). It is thus plausible that Dr. Corneal acted at least recklessly in compiling J.D.'s autopsy report, particularly given that consideration of the evidence that Dr. Corneal allegedly ignored resulted in Dr. Matshes and Dr. Shaller drawing different determinations as to the cause and manner of J.D.'s death. Kerlus has also plausibly alleged that Dr. Corneal's deliberate fabrication caused her deprivation of liberty given that the prosecution dropped the charges upon receipt of Dr. Shaller's report and no other evidence was considered in making that decision. I therefore deny the motion to dismiss on this basis.

b. <u>Fourth Amendment rights</u>

Kerlus also plausibly pleads a malicious prosecution claim against Dr. Corneal. For the reasons I explain above, it is plausible that the defendants lacked probable cause to arrest Kerlus without Dr. Corneal's autopsy report, that Dr. Corneal acted at least recklessly in preparing her

report, that the dismissal of the charges without prejudice is a termination of the proceedings in the plaintiff's favor, and that Kerlus's seizure for over three years constitutes damages.[10] *Galbraith*, 307 F.3d at 1127; ECF No. 68 at 9 (alleging Kerlus was seized for over three years).

2. Kerlus has plausibly alleged that her constitutional rights were clearly established.

Even if Kerlus has plausibly alleged that her constitutional rights were violated, Dr. Corneal "is nevertheless entitled to qualified immunity if the plaintiff's rights were not clearly established at the time of the alleged misconduct." *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (simplified). Kerlus must plausibly allege that "the contours of [her] right[s] [were] sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Id.* (simplified). I "look first to binding precedent" and "[i]f the right is clearly established by decisional authority of the Supreme Court or [the Ninth] Circuit, [my] inquiry should come to an end." *Id.*

The Clark County defendants argue that Kerlus "must provide . . . a case directly on point and/or [a] robust consensus of cases illustrating that a medical examiner conducting an autopsy by utilizing her medical expertise . . . becomes a clearly established constitutional violation when an incorrect cause of death is given." ECF No. 75 at 9 (emphasis omitted). Kerlus responds that the Ninth Circuit recognized the legitimacy of "Fourth and Fourteenth Amendment claims against coroners . . . for falsifying evidence" before the 2018 events at issue here. ECF No. 85 at 11.

[10] Dr. Corneal has not contested the fifth element of a § 1983 malicious prosecution claim (i.e., whether Kerlus has pleaded that Dr. Corneal prosecuted the plaintiff for the purpose of denying her a "specific constitutional right"). *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). I therefore do not address that issue.

Under the Fourth Amendment, "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy*, 368 F.3d at 1066. The Ninth Circuit has recognized that it "is clearly established law that a coroner may not recklessly or intentionally falsify an autopsy report in a manner that plays a material role in a false arrest and prosecution." *Goodman v. City of Los Angeles Police Dep't*, 708 F. App'x 888, 890 (9th Cir. 2017) (citing *Galbraith*, 307 F.3d at 1126). Similarly, under the Fourteenth Amendment, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). Kerlus has plausibly alleged rights that were clearly established in 2018. I therefore deny the Clark County defendants' motion to dismiss Counts I and II based on qualified immunity.

**E. I grant Clark County's and LVMPD's motions to dismiss the *Monell* claims.**

There is no respondeat superior liability for government entities under § 1983. *Monell*, 436 U.S. at 691. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To impose liability on the governmental entity, a plaintiff "must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989)). A plaintiff may establish such a policy by

demonstrating that the municipality "(1) [had] an official policy; (2) [had] a pervasive practice or custom; (3) [failed] to train, supervise, or discipline; or (4) [issued] a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

1. I grant Clark County's motion.

Clark County argues that Kerlus cannot succeed on a *Monell* theory of liability because she has failed to "allege that Clark County [ ] maintained any policy, practice, custom, or scheme designed to or otherwise resulting in constitutional violations." ECF No. 75 at 12. Clark County reasons that "[w]hile Plaintiff cites practices and policies within Clark County, they are more related to inadequate training and ratification," which it alleges Kerlus has not plausibly shown. *Id.* at 12–13. Kerlus responds that she has sufficiently alleged that Clark County both had an official custom of fabricating and misrepresenting evidence and failed to adequately train, supervise, and discipline its employees.[11]

Kerlus has failed to allege a plausible *Monell* theory against Clark County based on either (1) inadequate training or (2) a "widespread practice" of its employees "knowingly and deliberately ma[king] false statements and/or recklessly omitt[ing] material facts when investigating civilians for alleged criminal activity." ECF No. 68 at 19–20.

a. Kerlus has not plausibly alleged that Clark County inadequately trained or disciplined its coroners.

Kerlus has alleged that Clark County "fail[ed] to adequately train, supervise, control, and discipline its employees," "fail[ed] [to] adequately [ ] investigate, punish, and discipline prior instances of similar misconduct," and "approved" its employees' misconduct. ECF No. 68 at 19–

[11] Kerlus concedes that she did not assert a ratification theory. ECF No. 85 at 12–13 n.2. I thus do not address that theory.

20. Kerlus also alleges that Clark County failed to train its coroners "not to fabricate evidence, and to make . . . truthful disclosures in their reports." *Id.* at 15.

Clark County argues that Kerlus's allegations in support of her inadequate training claim are "broad and vague" and thus not viable. Clark County also argues that it was not necessary to have a policy prohibiting coroners from fabricating evidence because its coroners should know not to perform obviously illegal actions and that it is impractical to have a policy prohibiting every form of misconduct that may occur. Kerlus responds that in the face of repeated instances of misconduct, Clark County did not train, supervise, or discipline its employees, and that raises a reasonable inference that Clark County was deliberately indifferent in failing to adequately train or supervise its employees.

"[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted). If "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* This more stringent standard for finding fault is required under § 1983 because a lesser one "would result in de facto respondeat superior liability on municipalities." *Id.* at 62 (quotation omitted).

Kerlus's more specific allegation that Clark County failed to train its coroners not to fabricate evidence fails because an entity cannot be held liable for failing to train on something that is patently obvious. In *Flores v. County of Los Angeles*, the Ninth Circuit held that a municipality cannot be held liable for failing to train its officers to refrain from committing sexual assault because it was "patently obvious" that there was "every reason to assume that

police academy applicants are familiar with the criminal prohibition on sexual assault." 758 F.3d 1154, 1160 (9th Cir. 2014). Similarly, it would be "patently obvious" that Clark County's coroners are aware that they should not fabricate or omit material evidence when performing an autopsy.

Additionally, Kerlus pleads no facts about Clark County's training or disciplinary protocols to support her theory. A "formulaic recitation of [the section 1983] the elements of a cause of action" is not enough. *Twombly*, 550 U.S. at 555. Kerlus's reliance on *Ochoa v. City of San Jose*, No. 21-CV-02456-BLF, 2021 WL 7627630, at *8 (N.D. Cal. Nov. 17, 2021), for the proposition that she is not required to plead any additional detail because the coroners' pattern of outrageous conduct supports an inference of inadequate training by Clark County does not move the ball in her favor. Under *City of Canton, Ohio v. Harris*, I may examine whether public officials "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." 489 U.S. 378, 390 n.10 (1989). As I explain below, Kerlus's allegations do not plausibly establish an inference that Clark County was deliberately indifferent to "a pattern of tortious conduct by inadequately trained employees" because she has not plausibly pleaded such a pattern. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407–08 (1997). I thus dismiss this portion of Kerlus's *Monell* claim against Clark County. But because it is not clear that amendment would be futile, I grant leave to amend.

/ / / /

/ / / /

/ / / /

/ / / /

b. Kerlus has not plausibly alleged that a custom exists whereby Clark County employees fabricate evidence when investigating civilians for alleged criminal activity.

Kerlus has alleged the relevant custom or practice as "employees and agents of Clark County knowingly and deliberately ma[king] false statements and/or recklessly omitt[ing] material facts when investigating civilians for alleged criminal activity." ECF No. 68 at 19–20. To support her theory, Kerlus identified four other incidents of Clark County coroners allegedly compiling knowingly false or recklessly inaccurate autopsy reports. Clark County argues that I should read Kerlus's complaint to allege only an inadequate training theory and that Kerlus has not actually pleaded "any factual allegations pertaining to . . . [a] custom." ECF No. 75 at 12–13. Kerlus responds that she has pleaded "qualitatively similar incidents" to her case and that "all, similarly, involve the Coroner's Office fabricating or misrepresenting information in autopsy reports." ECF No. 85 at 14.

Kerlus offers four examples from 2022 to 2023. For purposes of a motion to dismiss, I accept the following allegations as true. First, inmate Christian Walker was beaten by correctional officers and was later found dead. ECF No. 68 at 13. In 2023, a Clark County coroner confirmed his injuries but fabricated his cause of death by finding that he died from a natural cause related to a heart issue; another coroner disagreed with that in an independent evaluation and found his death related to blunt force trauma. *Id.* Second, a Clark County Coroner collaborated with prison officials and falsely identified the major cause of inmate Patrick Odale's death to be a trace amount of drugs in his system rather the blunt force he experienced at the hands of correctional officers. *Id.* at 13–14. Third, in 2023, Allan Moore was charged with manslaughter because he had sold drugs to a woman who perished from an

overdose. *Id.* at 14. A Clark County coroner fabricated the woman's cause of death to advance Moore's prosecution as indicated by an independent autopsy which reflected that the amount of drugs in her system was so minimal that it was difficult to determine what caused her death. *Id.* at 14–15. Fourth, Melissa Olteanu's husband died and was found in a pool of blood with a hammer nearby, but a Clark County coroner found his cause of death to be a heart attack. *Id.* at 15.

To support her *Monell* claim, Kerlus must plead that Clark County had a "longstanding practice or custom" that was "so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) (quotation omitted). This custom must be so "well settled as to . . . [have] the force of law." *Gordon*, 6 F.4th at 974. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Only the Moore case supports her theory that "employees . . . of Clark County knowingly and deliberately ma[ke] false statements and/or recklessly omit[] material facts when investigating civilians for alleged criminal activity." ECF No. 68 at 9–10. The Walker and Odale cases involve alleged fabrication of evidence to cover up prison officials' misconduct. And Kerlus has not explained whether the autopsy in the Olteanu case was conducted as part of a criminal investigation. Kerlus's case together with only the Moore incident does not plausibly establish that Clark County had a custom of fabricating evidence to support criminal investigations of civilians that amounted to a policy with "the force of law." *Gordon*, 6 F.4th at 974 (quotation omitted). Rather, these two isolated incidents are best characterized as sporadic

and are thus not enough to plausibly show that Clark County could be liable under § 1983. *See Monell*, 436 U.S. at 691.

I therefore grant Clark County's motion to dismiss Count IV. However, because it is not clear that amendment would be futile, Kerlus may amend this claim.

2. I grant LVMPD's motion to dismiss Count V under *Monell.*

Kerlus alleges that the LVMPD both "fail[ed to] adequately train, supervise, control, and discipline its employees and agents. . . . [and] investigate, punish, and discipline prior instances of similar misconduct" and that the misconduct "was authorized, condoned, tolerated, and approved by [ ] LVMPD." ECF No. 68 at 21 (collectively referred to as "inadequate training"). Kerlus also alleges that "[o]fficers . . . of [ ] LVMPD have a documented history of fabricating evidence and deliberately making false statements and omissions of material facts in order to manufacture probable cause." *Id.* at 9. LVMPD argues that Kerlus's allegations are conclusory and her examples of unconstitutional misconduct are not persistent and widespread nor are they like what she allegedly experienced. Kerlus responds that she is not required to plead details as to her failure to train claim and that she has also pleaded a sufficient number of "qualitatively similar incidents" to support her custom theory. ECF No. 84 at 13–14, 21. Kerlus has failed to plausibly allege her Monell claim under either theory.[12]

a. Kerlus has not plausibly alleged that LVMPD has a custom of fabricating evidence to manufacture probable cause.

Kerlus offers four examples over a seventeen-year period, excluding Officer Santos's 2018 report, to support her custom theory. First, she alleges that in 2018 Keyherra Green was

[12] Kerlus concedes she asserts only these two theories for *Monell* liability against LMVPD. ECF No. 84 at 12.

wrongly arrested for murder based on a case of mistaken identity when officers should have arrested a "Keara Green." ECF No. 68 at 11. In that case, the parties entered into a settlement agreement. *Green v. LVMPD*, Dkt. No. 2:20-cv-00769-KJD-DJA, ECF Nos. 172, 173 (D. Nev.).[13] But before the parties settled, the judge granted summary judgment in the defendants' favor as to the fabrication of evidence claim. *Green v. LVMPD*, 2:20-cv-00769-KJD-DJA, ECF No. 136 at 10 (D. Nev. Mar. 11, 2024). The factual circumstances in the *Green* case are materially distinguishable from Kerlus's situation. There, the LVMPD's mistaken arrest of Green had been based on "numerous differences and similarities between [Green] and the actual killer . . . [and] [w]hile these differences [we]re not enough to support a claim of deliberate fabrication, . . . they [left] open the possibility that a reasonable jury could find that probable cause may have dissipated," so the judge denied the defendants' motion for summary judgment as to the malicious prosecution claim. *Id.* at 15. Thus, the factual circumstances in *Green* do not support the custom Kerlus alleges that LVMPD has in place: the "deliberate manufacturing of probable cause." ECF No. 68 at 12.

Second, Kerlus alleges that in 2018 Jesus Carvajal was wrongly arrested and charged with sexual assault and other crimes as result of LVMPD falsely claiming all the victims identified him from a line up and omitting the fact that a victim had also identified a different man as the offender. ECF No. 68 at 11–12. The dispute in that case centered on the officer's failure to report one witness's discrepancy in accurately identifying Carvajal and the accuracy of various statements in the arrest-warrant application. *Carvajal v. Clark Cnty.*, 539 F. Supp. 3d

[13] When ruling on a motion to dismiss, I need not "accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). I may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (quotation omitted).

1104, 1113 (D. Nev. 2021). In assessing the defendants' motion for summary judgment, the judge construed the factual disputes in Carvajal's favor and determined that a "factfinder could conclude that the officers acted with at least reckless disregard for the truth" when reporting "less than the total story so as to manipulate the inferences a judge will draw in determining probable cause." *Id.* at 1114 (simplified). But the judge determined no constitutional violation occurred because the alleged misrepresentation and omissions in the warrant application were immaterial to the finding of probable cause. *Id*. at 1113–15. The judge did not find deliberate fabrication of evidence; rather, she held that "disputes of fact remain over the accuracy of several statements in the arrest-warrant application." *Id.* at 1113. Thus, *Carvajal* does not prove a pattern of LVMPD officers deliberately falsifying evidence.

Third, in 2001, Kirstin Lobato was "wrongfully arrested and later convicted of a murder she did not commit" based on the LVMPD's fabrication and manipulation of evidence. ECF No. 68 at 9–10. Fourth, in 2005, Jeffrey Port was wrongfully arrested after a police officer fabricated evidence and wrote a false report incriminating Port because that officer used the funds that LVMPD provided to purchase drugs from Port to gamble. ECF No. 68 at 10. LVMPD does not dispute Kerlus's characterizations of these two cases.

The Lobato and Port cases, along with Kerlus's case, are insufficient to establish a custom or practice so persistent and widespread that it practically has the force of law. These incidents are properly characterized as sporadic. The Lobato and Port incidents occurred more than a decade before Kerlus's alleged wrongful arrest. And in the Port incident, Kerlus admits the officer was acting in his own interest to hide his improper use of official funds rather than as a part of an LVMPD custom or practice. It is not plausible that such a remote connection

between events, with no intervening similar incidents, establishes a persistent and widespread pattern of constitutional misconduct.

b. <u>Kerlus has not plausibly alleged inadequate training to support her *Monell* claim.</u>

Kerlus's conclusory statements about LVMPD's failure to train its officers, which provide no factual support regarding the training inadequacies, are insufficient. Similarly, Kerlus's reliance on *Ochoa* to support that the four prior incidents of alleged LVMPD misconduct are "outrageous" and thus give rise to a reasonable inference that inadequate training occurred fails because Kerlus did not plausibly allege a pattern of unconstitutional misconduct. ECF No. 84 at 20. I therefore grant the LVMPD's motion to dismiss Count V, with leave for Kerlus to amend.

## IV. CONCLUSION

I THEREFORE ORDER that defendants Las Vegas Metropolitan Police Department's and Officer A. Santos's motion to dismiss (ECF No. 74) is **GRANTED in part** as set forth in this order.

I FURTHER ORDER that defendants Clark County's and Dr. Jennifer Corneal's motion to dismiss (ECF No. 75) is **GRANTED in part** as set forth in this order.

I FURTHER ORDER that plaintiff Kristina Kerlus may file an amended complaint. consistent with this order by November 19, 2026 if she has facts to do so.

DATED this 21st day of October, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE